UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JOYCE E. GREEN, | : | Case No. 3:11-cv-440 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | Magistrate Judge Michael R. Merz |
| vs. | : | |
| | : | |
| WAL-MART STORES, EAST, L.P., | : | |
| | : | |
| Defendant. | : | |

**DECISION AND ENTRY GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (Doc. 25) IN PART AND DENYING IN PART**

This civil case is before the Court on Motion for Summary Judgment filed by

Defendant Wal-Mart Stores, East, L.P. ("Walmart").  Plaintiff Joyce Green ("Plaintiff") filed

a Memorandum in Opposition to Walmart's Motion.  (Doc. 29).  Walmart filed a Reply Brief

in Support of its Motion.  (Doc. 33).  Walmart's Motion is now ripe.

## I.  FACTS[1]

Plaintiff began working at Walmart in 1997 in Seguin, Texas as cashier.  Within a

year, Plaintiff transferred to the Walmart store in Beavercreek, Ohio.  Plaintiff worked as a

cashier in the Beavercreek Walmart store until she became the department manager of

sporting goods in 2005.  Walmart disciplined Plaintiff for the first time in 2011.  Plaintiff's

employment with Walmart ended on or about October 7, 2011.

---

[1] Pursuant to the Standing Order of the Court, Defendant filed a Statement of Proposed Undisputed Facts.
(Doc. 26).  Plaintiff responded to the Defendant's Statement of Proposed Undisputed Facts. (Doc. 29-1).  This
statement of facts includes facts deemed undisputed by the parties in those documents.

Walmart maintains a Family and Medical Leave Act ("FMLA") and Leave of Absence Policy that applied to the Plaintiff during her tenure with the Company.  The policy permits Walmart associates to request FMLA leave to care for their own serious health conditions, or if the associate is needed to care for family members who have a serious health condition.  At the store level, the personnel manager is responsible for distributing FMLA paperwork and leave of absence packets to potentially-eligible Walmart associates.  The store manager is responsible for approving or denying specific leave requests.

Walmart maintains a coaching policy outlining a progressive disciplinary plan, *i.e.*, a coaching plan.  The coaching plan provides that, in most cases, associates will receive verbal, written, and decision-making coaching before being terminated upon receiving their fourth coaching step.

Walmart also maintains an attendance and punctuality policy ("attendance policy").  Under the attendance policy, Walmart generally considers all absences to be excused or unexcused, and unexcused absences will result in an associate receiving an attendance "occurrence."  Under the terms of the attendance policy, the first three associate absence occurrences during a six-month rolling period do not result in a coaching, *i.e.*, a step in the progressive discipline process.  Upon receiving a fourth occurrence, the policy provides that an associate should receive a coaching, and additional coaching for each additional occurrence thereafter.

However, evidence demonstrates that Walmart did not strictly enforce the coaching policy with regard to its attendance policy.  Allen Lattimore, Sr., an assistant manager at the Beavercreek Walmart during Plaintiff's employment, testified that, with regard to coaching

for attendance occurrences, "there is some leniency in there[.]"  In fact, in a performance evaluation issued to Plaintiff in 2010, the evaluation noted that Plaintiff had fourteen outstanding attendance occurrences, although she never received any coaching as a result.

Walmart also maintains a meal and break policy ("meal policy").  The meal policy provides that Walmart associates must take a meal period before working more than six consecutive hours.

During Plaintiff's employment at Walmart, she took FMLA leave three times, and all of Plaintiff's FMLA leave requests were granted by the store manager, and Plaintiff was reinstated to her previous position after returning from FMLA leave.  No one at Walmart made any negative or inappropriate comments or threats to Plaintiff upon her return from any of her FMLA leaves, and her job duties did not change upon her return to work from any of these three FMLA leaves.

Plaintiff had unexcused absences on the following dates: November 1, 2, 17, 18 and December 11, 2010, and February 1 and 2, 2011.  Plaintiff was also absent from work on January 3, 5, 6 and 7, 2011 for approved FMLA leave.  On February 7, 2011, Plaintiff received a verbal coaching concerning her attendance.  At the time of the verbal coaching, Plaintiff's January 2011 FMLA-qualifying absences were erroneously marked as unexcused absences, and, thus, designated as attendance occurrences upon which the coaching was based.  Notably, this attendance coaching, which was Plaintiff's first during her entire employment with Walmart, occurred within weeks after taking FMLA-qualifying leave in January 2011.

After receiving her verbal coaching, Plaintiff accrued additional unexcused absences on the following dates: March 22, 30, 31, April 1, May 17 and 18, and June 10, 2011. Plaintiff received a written coaching for excessive absenteeism from Allen Lattimore, Sr. on June 13, 2011 for "Attendance/Punctuality."

On July 13, 20122, Plaintiff received a decision-making day coaching because she failed to display urgency in setting modulars in her department by the close of business. Notably, approximately two weeks before receiving the decision-making day coaching, Plaintiff informed Walmart that she would need time off from work on August 18, 2011 for a medical procedure to be performed on August 19, 2011.  A note from Plaintiff's doctor regarding the need to be off from work was dated July 7, 2011, less than a week before Plaintiff was issued the decision-making day coaching.

On September 22, 2011, Plaintiff requested to leave work early, and that request was approved.  Plaintiff planned to work six consecutive hours and then clock out for the day. On that day, Plaintiff actually worked six hours and sixteen minutes without clocking out for a meal period, a purported violation of Walmart's meal policy.

On September 23, 2011, personnel manager Judy Boyce began a "Meal Period Investigation Worksheet" which noted that on September 22, 2011, Plaintiff worked six hours and sixteen minutes consecutively, and that Plaintiff had explained that she had done so because she was stopped by a customer while on her way to clock out.  On September 27, 2011, Plaintiff submitted to Ms. Boyce FMLA paperwork requesting intermittent FMLA leave to care for her husband, and her FMLA leave request was granted by store manager Sean Espy on October 5, 2011.

4

On October 7, 2011, Plaintiff met with store manager Sean Espy and informed him of her husband's need for a quadruple bypass surgery. Later that same day, assistant manager Jennifer Anson completed the "Meal Period Investigation Worksheet," noting that Plaintiff's failure to take a timely meal period was "voluntary, customer initiated."  The meal violation resulted in a coaching under Walmart's progressive discipline policy, and because Plaintiff's coaching for this meal violation was her fourth active coaching step, Walmart terminated Plaintiff's employment.  Plaintiff's exit interview explains that she was terminated for misconduct with coachings and notes that her final coaching occurred because she worked more than six consecutive hours without taking a meal break.  Plaintiff contends that Walmart terminated her employment because she took FMLA leave.

## II.  STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).  "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)).  "Weighing of the evidence or making credibility determinations are prohibited at summary judgment  -  rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading[.]" *Viergutz v. Lucent Technologies, Inc.*, 375 Fed. Appx. 482, 485 (6th Cir. 2010) (citation omitted).  Instead, the party opposing summary judgment "must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." *Id.* (citation omitted).  In fact, Fed. R. Civ. P. 56(c) states that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the material cited do not establish the absence . . . of a genuine dispute[.]" Where "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . .  consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e)(2).

## III.  ANALYSIS

Plaintiff asserts the following in this case: (1) that Walmart interfered with her rights under the Family and Medical Leave Act ("FMLA"); (2) that Walmart retaliated against her for taking and/or requesting FMLA leave; (3) that Walmart discriminated against her on the basis that her husband was disabled, *i.e.*, a claim of associational disability discrimination under Ohio law; and (4) that Walmart intentionally inflicted emotional distress upon Plaintiff by terminating her employment.  Walmart moves for summary judgment on each claim asserted by Plaintiff.

### A.    FMLA CLAIMS

The Family and Medical Leave Act ("FMLA") provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [i]n

order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse,

son, daughter, or parent has a serious health condition."  29 U.S.C. § 2612(a)(1)(C).  Upon

return from such leave, an employer is required to restore the employee "to the position of

employment held by the employee when the leave commenced" or "to an equivalent position

with equivalent employment benefits, pay, and other terms and conditions of employment."

29 U.S.C. § 2614(a)(1).

Pursuant to 29 U.S.C. § 2615(a), employers violate FMLA if they "interfere with,

restrain, or deny the exercise of or the attempt to exercise, any right provided under" FMLA,

or "to discharge or in any other manner discriminate against any individual for opposing any

practice made unlawful by this subchapter."  In other words, there are "two distinct theories

for recovery under the FMLA: (1) the "entitlement" or "interference" theory arising from 29

U.S.C. § 2615(a)(1); and (2) the "retaliation" or "discrimination" theory arising from 29

U.S.C. § 2615(a)(2)."  *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004).

Courts apply "the Title VII burden-shifting framework established in *McDonnell

Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to

both FMLA interference and retaliation claims where . . . there is no direct evidence of

unlawful conduct."  *Gates v. United States Postal Service*, 502 Fed.Appx. 485, 489 (6th Cir.

2012) (citation omitted).  Should Plaintiff demonstrate "a prima facie case as to either an

interference or retaliation claim under the FMLA, the burden then shifts to the employer to

articulate a legitimate, nondiscriminatory reason for the adverse employment action."  *Id.*

(citation omitted).  Should Defendant satisfy its burden, "[P]laintiff must show that the

proffered reason is a pretext for unlawful discrimination."  *Id.*

7

1.    **FMLA Entitlement Interference**

With regard to the interference theory, 29 U.S.C. § 2615(a)(1) states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." To demonstrate such a claim, a plaintiff must show that the employer "interfered with a FMLA right to medical leave or to reinstatement following FMLA leave." *Hoge*, 384 F.3d at 244 (citing *Arban v. West Publ'g Corp.*, 345 F.3d 390, 400 (6th Cir. 2003); *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003)).

To successfully present a prima facie case of FMLA interference, Plaintiff must show "that (1) [s]he was an eligible employee; (2) Defendant was an employer subject to the FMLA; (3) [s]he was entitled to leave under the FMLA; (4) [s]he gave [her] employer notice of [her] intention to take FMLA leave; and (5) Defendant denied [her] FMLA benefits to which [s]he was entitled." *Romans v. Mich. Dep't of Human Serv.*, 668 F.3d 826, 840 (6th Cir. 2012) (citing *Grace v. USCAR & Bartech Tech. Servs.*, 521 F.3d 655 (6th Cir.2008)); *see also Gates*, 502 Fed.Appx. at 489.

At issue in a FMLA interference claim "is simply whether the employer provided its employee the entitlements set forth in the FMLA-for example, a twelve-week leave or reinstatement after taking a medical leave." *Arban v. West Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003) (citations omitted). The employer's intent is irrelevant in determining a FMLA interference claim. *Id.* Because "FMLA is not . . . a strict liability statute . . . a plaintiff must establish that she was harmed by the defendant's alleged FMLA violation in order to survive summary judgment." *Womack v. Brown-Forman Corp.*, 897 F.Supp.2d 646,

8

659 (E.D. Tenn. 2012) (citing *Romans*, 668 F.3d at 842); *see also Hollins v. Ohio Bell Tel. Co.*, 496 F.Supp.2d 864, 871 (S.D. Ohio 2007) (stating that, even where an employer interferes with the exercise of FMLA rights, FMLA "provides no relief unless the employee has been prejudiced by the violation").

The dispute here centers on the fifth element, *i.e.*, whether Defendant denied Plaintiff FMLA benefits to which she was entitled.  With regard to this element, the Sixth Circuit states that, "[i]f an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled." *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007).   Accordingly, a plaintiff satisfies the burden of proving "the fifth element of an interference claim" upon demonstrating that "the employer has 'somehow used the leave against her and in an unlawful manner, as provided in either the statute or regulations.'" *Id*. (citing *Bradley v. Mary Rutan Hosp.*, 322 F.Supp.2d 926, 940 (S.D. Ohio 2004).

Plaintiff argues that a genuine issue of material fact remains concerning the fifth element because Walmart indisputably counted four days of Plaintiff's FMLA leave in January 2011 as unexcused absences under Walmart's attendance policy, which lead to a verbal coaching under Walmart's progressive discipline process shortly thereafter, in February 2011.  Walmart acknowledges that Plaintiff's absences on January 3, 5, 6 and 7, 2011 were mistakenly marked as unexcused absences despite those days subsequently being approved as FMLA leave absences.  Nevertheless, Walmart argues that Plaintiff had sufficient unexcused absences aside from the mismarked FMLA absences to justify coaching under Walmart's progressive discipline policy.

Specifically, Plaintiff had the following three properly unexcused absence occurrences prior to being absent on approved FMLA leave in January 2011: (1) November 1 and 2, 2010; (2) November 17 and 18, 2010; and (3) December 11, 2010.  Plaintiff then had a fourth unexcused absence occurrence on February 1 and 2, 2011.  Walmart's progressive discipline process justified a verbal coaching after four unexcused absence occurrences. Thereafter, Plaintiff had additional unexcused, non-FMLA absence occurrences in March, April, May and June of 2011, which resulted in a written coaching under Walmart's policies.

As noted by courts in this district, the rights created under FMLA "are not absolute." *Hollins*, 496 F.Supp.2d at 871 (S.D. Ohio 2007).  In fact, "interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct."  *Id*. (citing *Edgar v. JAC Prods.*, 443 F.3d 501, 508 (6th Cir. 2006)).  As such, employees "requesting FMLA leave can still be lawfully terminated for reasons unrelated to such leave."  *Arban*, 345 F.3d at 401 (citing *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998). However, in cases where an employee is purportedly terminated for excessive absenteeism, "a termination based only in part on an absence covered by the FMLA, even in combination with other absences, may still violate the FMLA."  *Cavin*, 346 F.3d at 727 (citing *Barnett v. Revere Smelting & Refining Corp.*, 67 F.Supp.2d 378, 388 (S.D.N.Y. 1999)).

In *Cavin*, plaintiff sustained a shoulder injury that required him to take approximately seven days off from work in June 1999.  *Id*. at 716-17.  Upon returning to work, plaintiff was coached under his employer's progressive disciplinary process for excessive absenteeism. *Id*. at 717.  Plaintiff's employer subsequently approved a portion of plaintiff's absence as

FMLA qualifying, but erroneously failed to approve three days of leave as FMLA qualifying. During the following months, plaintiff missed work again because of shoulder pain. *Id*. The employer approved some of plaintiff's requested FMLA leave, but denied a certain portion of the leave because plaintiff failed to fully and timely complete a leave certification form. *Id*. at 717-18. Thereafter, the employer terminated plaintiff's employment for a second violation of the leave policy. *Id*. at 718.

In considering plaintiff's FMLA interference claim, the Sixth Circuit concluded that plaintiff "arguably suffered direct harm as a result of the June incident" because he "was coached about Honda's leave policies, which" was the "'the first step in progressive discipline.'" *Id*. at 727. In addition, plaintiff's June absence was "included among a presentation to the review panel evaluating [plaintiff's] separation," and therefore, the Sixth Circuit concluded that "Honda's conclusion that the June absences were not FMLA-qualifying leave was arguably a 'negative factor' in Honda's decision to" terminate plaintiff's employment. *Id*.

Here, the parties do not dispute that Plaintiff had sufficient absence occurrences to justify the verbal coaching received in February pursuant to Walmart's progressive discipline process even if the January absences were properly marked as FMLA-qualifying approved absences. However, Plaintiff insists that because the January FMLA absences were improperly marked as non-FMLA qualifying absences at the time of her verbal coaching, at the very least, an issue of fact remains as to whether Walmart considered those FMLA absences and used those absences against Plaintiff when it decided to issue a verbal coaching to Plaintiff in February 2011.

Evidence in the record suggests that Walmart did not automatically apply the progressive discipline process at the exact point an employee incurred four absence occurrences.  In fact, at the time Plaintiff was verbally coached regarding attendances, Walmart's records reflected that she had seven outstanding absence occurrences.  A earlier review of Plaintiff's own performance record reveals that she once had as many as fourteen absence occurrences on her record, yet received no discipline under Walmart's progressive discipline policy.  Yet, when Plaintiff received the verbal coaching in February 2011, it occurred shortly after she returned from FMLA-qualifying absences.  At the very least, an issue of fact remains at to whether Plaintiff's FMLA-qualifying absences in January 2011 were considered as a negative factor in Walmart's decision to issue a verbal coaching to Plaintiff at that time, and thus trigger the first step in the progressive discipline process.

Accordingly, based on the foregoing, the Court finds that Plaintiff satisfies a prima facie case of FMLA interference.

### 2.    FMLA Retaliation

With regard to the retaliation theory, 29 U.S.C. § 2615(a)(2) states that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."  A prima facie case of FMLA retaliation requires Plaintiff prove "that (1) [s]he engaged in an activity protected by the Act; (2) Defendant took an adverse employment action against [her]; and (3) that there was a causal connection between the protected activity and the adverse employment action." *Romans*, 668 F.3d at 842 (citing *Edgar v. JAC Prods., Inc.*, 443 F.3d 501 (6th Cir. 2006)).

Here, with regard to a *prima facie* case of retaliation, the parties dispute the existence of the third element, *i.e.*, a causal connection between Plaintiff's FMLA leave and the adverse employment action.  Plaintiff asserts that temporal proximity alone can satisfy the causation element of a prima facie case of FMLA retaliation, whereas Defendant contends that proximity alone is insufficient.

"Sixth Circuit law on this particular point is far from uniform[.]"  *Hamilton v. Starcom Mediavest Group, Inc.*, 522 F.3d 623, 629 (6th Cir. 2008).  While generally, temporal proximity alone is not sufficient, it can, "in certain circumstances, suffice to show a causal connection in a retaliation case" in circumstances "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation."  *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 305-6 (6th Cir. 2012).

The Sixth Circuit "has typically found the causal connection element satisfied only where the adverse employment action occurred within a matter of months, or less, of the protected activity."  *Id.* (citing *Gambill v. Duke Energy Corp.*, 456 F. App'x 578, 589 (6th Cir. 2012); *Dixon v. Gonzales*, 481 F.3d 324, 334 (6th Cir. 2007)); *see also A.C. ex rel. J.C. v. Shelby County Bd. of Educ.*, 711 F.3d 687, 699 (6th Cir. 2013) (stating that "[t]emporal proximity can often help meet this causal burden . . . and where the adverse action comes 'very close in time' after the exercise of protected activity, 'such temporal proximity ... is significant enough' to meet the burden alone") (internal citations omitted).

In this case, the Court need not necessarily determine whether temporal proximity, in and of itself, is sufficient to demonstrate causation under the facts here because Plaintiff points to more than just temporal proximity in an effort to prove causation.  In addition to temporal proximity, Plaintiff points to the fact that Walmart treated her differently before she sought intermittent FMLA leave than it did afterwards.  "[W]here an employer treats an employee differently after she asserts her rights . . . than before she had done so, a retaliatory motive may be inferred."  *Cantrell v. Nissan N. Am.*, 145 Fed. Appx. 99, 104-105 (6h Cir. 2005) (citing *Walborn v. Erie Cnty. Care Facility*, 150 F.3d 584, 589 (6th Cir. 1998); *DeBoer v. Musashi Auto Parts, Inc.*, 124 Fed.Appx. 387, 394 (6th Cir.2005); *Walborn v. Erie County Care Facility*, 150 F.3d 584, 588-89 (6th Cir.1998)).

Here, before 2011, Plaintiff worked for Walmart without any discipline since 1997. Walmart displayed a tremendous amount of latitude with Plaintiff's absences before 2011, specifically, in 2010, when Plaintiff incurred fourteen absence occurrences and received no discipline as a result.  Within weeks after taking FMLA-qualifying leave in January 2011, Walmart turned to its progressive discipline process and issued Plaintiff a verbal coaching for incurring approximately seven absence occurrences, some of which included Plaintiff's January FMLA qualifying leave.  Within a year after receiving her first discipline during her entire employment history with Walmart, she was disciplined three additional times under Walmart's progressive discipline process, the last two times shortly after Plaintiff requested leave for medical purposes.

Based on the foregoing, the Court concludes that Plaintiff points to sufficient evidence in demonstrating an issue of material fact with regard to causation.

14

3.    **Pretext**

Walmart also argues that even if Plaintiff can demonstrate a prima facie case of

FMLA interference or FMLA retaliation, summary judgment is proper because it has

proffered a legitimate, non-discriminatory reason for Plaintiff's termination and Plaintiff

cannot demonstrate that its proffered reason is pretextual.  "[P]laintiff can show pretext in

three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the

proffered reasons did not actually motivate the employer's action, or (3) that they were

insufficient to motivate the employer's action."  *Romans*, 668 F.3d at 839 (citing *Chen v.*

*Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009).  To meet the burden of showing pretext,

a plaintiff must present "sufficient evidence from which the jury could reasonably reject [the

defendants'] explanation and infer that the defendants intentionally discriminated against

[her]."  *Simpson v. Vanderbilt Univ.*, 359 Fed. Appx. 562, 569-70 (6th Cir. 2009)  (citations

omitted)

Here, the main basis of Walmart's argument is that temporal proximity alone cannot

demonstrate pretext.  Walmart's contention in this regard is correct.  While temporal

proximity may be sufficient to show causation, it alone is not sufficient to demonstrate

pretext.  *Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309, 317 (6th Cir. 2001)

(stating that "temporal proximity is insufficient in and of itself to establish that the

employer's nondiscriminatory reason for discharging an employee was in fact pretextual");

*Rhynes-Hawkins v. Potter*, No. 06–2763–STA–egb, 2009 WL 5031312, *14 (W.D. Tenn.

Dec. 15, 2009) (stating that "[w]hile temporal proximity permits Plaintiff to make out a

prima facie case of FMLA retaliation, temporal proximity alone is insufficient to establish pretext").

However, Plaintiff points to evidence aside from temporal proximity in arguing that Walmart's proffered reason for Plaintiff's termination was pretext to FMLA retaliation, such as Walmart's failure to uniformly apply its progressive discipline policy in her circumstances. The Sixth Circuit has concluded that "[e]vidence that the progressive-discipline policy asserted as a rationale for an employee's termination was not uniformly applied is evidence of pretext." *Lamer v. Metaldyne Co. LLC*, 240 Fed. Appx. 22, 33 (6th Cir. 2007) (citations omitted).

Here, as set forth above, Walmart did not uniformly apply its progressive-discipline policy with regard to Plaintiff with regard to absence occurrences. In cases alleging retaliation, "the same circumstances which established a causal connection between [plaintiff's] protected activity and her termination also serve as sufficient evidence to meet" the test for establishing pretext. *Cantrell*, 145 Fed. Appx. 107.

In addition to temporal proximity and Walmart's failure to uniformly apply its progressive-discipline policy with regard to Plaintiff, Plaintiff also points to the decision day discipline as insufficient to warrant discipline and argues that the reasons proffered for such discipline did not actually motivate the coaching. Again, Plaintiff was issued a decision-day coaching for failing to show a sense of urgency in setting modulars. Plaintiff was apparently instructed twice that her modulars had to be set by the close of business. Plaintiff testified that the discipline was issued before the close of business, and despite the discipline, Plaintiff finished the modulars before the close of business that day.

16

Certainly, whether or not Plaintiff displayed "a sense of urgency" is a subjective determination.  While courts have concluded that "the use of subjective criteria alone will not establish pretext[,]" it can "be considered in conjunction with . . . other evidence of pretext." *Cotton v. City of Franklin*, No. 3:09-cv215, 2010 WL 3521751, at *11 (W.D. Tenn. Sept. 7, 2010) (citations omitted); *see also Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1120 (10th Cir. 2007) (stating that "the existence of subjective criteria alone is not considered evidence of pretext; rather, the existence of other circumstantial evidence may provoke a stronger inference of discrimination in the context of subjective evaluation standards").

Finally, with regard to Plaintiff's meal violation, which ultimately resulted in her termination, there is a conflict in the record as to whether managers generally excuse meal violations when an employee is stopped by a customer while on the way to clock-out. According to Allen Lattimore, Sr., who worked as an assistant manager at the Beavercreek Walmart during Plaintiff's employment, Walmart employees generally do not receive disciplinary action if a meal violation occurs because the associate was assisting a customer:

> Q  Do managers have any discretion with respect to whether circumstances justify not disciplining an employee for a meal violation?
>
> A  Right.  That would go back to if you did get stopped by a customer, then you wouldn't receive an action . . .
>
> . . .
>
> Q  If in a situation where an associate were stopped by a customer that caused them to go over the 6 hours, they would not receive a meal violation?
>
> A  Correct.

(Doc. 24, PAGEID 667-668).  Based on this testimony, an issue of fact remains as to whether Plaintiff's purported meal violation was sufficient to justify her termination and whether the meal violation actually motivated Plaintiff's termination.

Accordingly, because issues of fact remain as to whether Walmart's proffered reason for Plaintiff's discipline and termination are mere pretext to improper FMLA retaliation or interference, the Court **DENIES** summary judgment on Plaintiff's FMLA claims.

### B.      ASSOCIATIONAL DISABILITY CLAIM

Walmart moves for summary judgment on Plaintiff's associational disability claim, which Plaintiff seeks to assert under Ohio law.  Plaintiff does not assert an associational disability claim under federal law.

The Sixth Circuit concludes that, while "[t]he Americans with Disabilities Act prohibits discrimination against a 'qualified individual because of the known disability and an individual whom the qualified individual is known to have a relationship or association . . . [t]he Ohio handicap discrimination statue contains no comparable prohibition against associational discrimination."  *Smith v. Hinkle Manufacturing, Inc.*, 36 Fed. Appx. 825, 830-31 (6th Cir. 2002).  While Plaintiff cites the case of *Arnold v. City of Columbus*, No. Nos. 11–3459, 11–3468, 11–3815, 2013, 2013 WL 628447 (6th Cir. Feb. 20, 2013), for the proposition that associational disability claims are recognized under Ohio law, the *Arnold* case, and the cases cited therein, involve claims of associational race discrimination.

Finding no authority establishing the existence of such a claim of associational *disability* discrimination, the Court **GRANTS** Walmart's Motion with regard to Plaintiff's claim of associational disability discrimination.

## C.    EMOTIONAL DISTRESS

Finally, Walmart moves for summary judgment on Plaintiff's intentional infliction of emotional distress ("IIED") claim.  To prevail on a claim for intentional infliction of emotional distress under Ohio law, one must prove that:

> (1) the defendant intended to cause, or knew or should have known that his actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure.

*Shugart v. Ocwen Loan Servicing, LLC*, 747 F.Supp.2d 938, 944-45 (S.D. Ohio 2010) (citations omitted).

An IIED claim "must be based on more than 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Kimmel v. Lowe's Inc.*, No. 23982, 2011 WL 96317, at *2 (Ohio App. Jan. 7, 2011) (citing *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 375, 453 N.E.2d 666 (Ohio 1983)).  Initially, "[w]hile Ohio does not require expert medical testimony to support an intentional infliction of emotional distress claim, a plaintiff must at least provide some evidence beyond his or her own testimony."  *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1111 (6th Cir. 2008) (citing *Buckman-Peirson v. Brannon*, 159 Ohio App.3d 12, 822 N.E.2d 830, 841 (2004)).

In this case, Plaintiff's evidence fails to demonstrate a factual issue as to whether Plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure.  In addition, the evidence does not create an issue of fact as to whether Walmart's

conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community.

Accordingly, the Court **GRANTS** summary judgment on Plaintiff's IIED claim.

### IV.  CONCLUSION

Based on the foregoing, the Court **DENIES** Walmart's Motion for Summary Judgment (Doc. 25) on Plaintiff's FMLA claims.  The Court **GRANTS** Walmart's Motion for Summary Judgment with regard to Plaintiff's associational disability claim under Ohio law and Plaintiff's IIED claim.

**IT IS SO ORDERED.**

Date:  6/25/13                                    *s/ Timothy S. Black*
                                                  Timothy S. Black
                                                  United States District Judge